UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELISEO GUTIERREZ and VERONICA GUTIERREZ, husband and wife, and DR. MICHAEL SCOTT ANGLESEY, individually,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ALLIED PROFESSIONALS INSURANCE COMPANY, a Risk Retention Group, Inc. an Arizona Corporation,<br><br>                    Defendant. | No.  4:15-CV-5033-EFS<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT, AND GRANTING DEFENDANT'S REQUEST FOR A STAY** |

This Order serves to supplement and memorialize the Court's oral ruling on the three pending motions, which were heard on September 23, 2015.[1] For the reasons that follow, the Court stays this matter until the Central District of California resolves Defendant Allied Professionals Insurance Co.'s (APIC) to-be-filed motion seeking relief from that court's prior decision and the Ninth Circuit reacts to that ruling.

//

/

---

[1] Andrea Clare appeared on Plaintiffs' behalf, and David Schoeggl appeared on Defendant's behalf.

ORDER - 1

**A.   Factual and Procedural Background[2]**

Eliseo Gutierrez sought chiropractic treatment from Dr. Michael Anglesey in December 2012.  Complaint, ECF No. 3 ¶ 3.2.  During a visit on December 13, 2012, Mr. Gutierrez fell ill, either while waiting for chiropractic treatment or after receiving chiropractic treatment, and was taken to the hospital.  *Id.* ¶ 3.2.  The hospital determined 34-year-old Mr. Gutierrez suffered a bilateral vertebral artery dissection, causing a stroke and severe neurological trauma.  *Id.* ¶¶ 3.2-3.3.  The next day, Dr. Anglesey followed up with Mrs. Gutierrez to see how Mr. Gutierrez was doing.  Mrs. Gutierrez advised him of Mr. Gutierrez's condition and thanked him for the call.  There was no discussion that chiropractic care was the cause of Mr. Gutierrez's condition during this telephone call.

Later, Mrs. Gutierrez inquired with medical personnel as to the potential causes of her husband's condition.  It was determined by the hospital physicians that Mr. Gutierrez's artery dissection was caused by a cervical adjustment.  Mrs. Gutierrez filed a claim with the Washington State Department of Health against Dr. Anglesey.

On January 28, 2013, the State of Washington Department of Health sent Dr. Anglesey a letter, which informed him of an

---

[2] This background is based on the Complaint's factual allegations, the documents and court cases referenced therein, and any facts that appear undisputed based on the present record.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2008); *United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003).

ORDER - 2

investigation regarding a complaint of alleged "incompetence, negligence or malpractice." This letter advised that the matter was assigned to an investigator but did not identify the name of the complainant or provide any information about the complaint. ECF No. 3 ¶ 3.4. Dr. Anglesey did not suspect that this investigation was related to the Gutierrezes.

One month after receiving this letter, Dr. Anglesey submitted an application to renew his professional malpractice insurance with Allied Professional Insurance Co. (APIC). ECF No. 3 ¶ 3.5. Dr. Anglesey had purchased professional liability policies from APIC for approximately eight years. *Id.* ¶ 3.1. The single-page renewal form for the March 2, 2013, to March 2, 2014 period doubled as an invoice. *Id.* ¶ 3.5. On the single-page renewal form, Dr. Anglesey answered "no" to the following questions:

- Since your last renewal has any agency or association investigated or taken action against you or your license?

- Since your last renewal, has any malpractice allegation been asserted against you or your associates, or has there been any event or indication suggesting a claim may be made or that your care might have been deficient or cased harm?

Dr. Anglesey faxed in his renewal form and invoice to APIC, which stamped it "received" on February 29, 2013. *Id.* ¶ 3.5. APIC issued Dr. Anglesey a claims-made policy, covering the period of March 2, 2013, through March 2, 2014. This policy includes an arbitration clause, which states:

> All disputes or claims involving the Company shall be resolved by binding arbitration, whether such dispute or claim arises between the parties to this Policy, or between the company and any person or entity who is not a party to

ORDER - 3

1   the Policy but is claiming rights either under the Policy
2   or against the Company. . . . The arbitration shall occur
    in Orange County, California.  The laws of the State of
3   California shall apply to any substantive, evidentiary or
    discovery issues.

4   ECF No. 35 ¶ 13.

In March 2013, the Washington State Department of Health (DOH) wrote Dr. Anglesey regarding "2013-269CH," identifying the complainant as Mr. Gutierrez and requesting his full and complete patient records. ECF No. 3 ¶ 3.6. Dr. Anglesey reported Mr. Gutierrez's complaint to APIC on or before April 1, 2013, and requested that APIC assist him with the DOH investigation. *Id.* ¶ 3.7. On April 22, 2013, Dr. Anglesey again informed APIC of the potential malpractice claim involving Mr. Gutierrez.

On April 26, 2013, APIC sent two letters to Dr. Anglesey. ECF No. 3 ¶ 3.8. The first letter discussed the DOH investigation and advised that the APIC policy did not provide coverage for the April 22, 2013-tendered claim. *Id.* The second letter discussed Dr. Anglesey's renewal application and advised that APIC determined that Dr. Anglesey violated his policy's application warranty by failing to disclose the potential Gutierrez claim on the renewal application in February 2013. *Id.* ¶ 3.9. This letter offers Dr. Anglesey the opportunity to provide information regarding his non-disclosure no later than May 10, 2013. *Id.*

On May 7, 2013, Dr. Gutierrez provided APIC with information; however, APIC did not alter its determination. On May 30, 2013, APIC rescinded both the 2012-13 policy and the 2013-14 policy. ECF No. 3

ORDER ~ 4

¶ 3.10. APIC refunded the premiums that Dr. Anglesey had paid. Dr. Anglesey kept the refunded money.

On June 20, 2013, letters were sent to Dr. Anglesey and the Gutierrezes from the DOH, stating that "[b]ased upon our investigation the Chiropractic Commission closed the case because of insufficient evidence." *Id.* ¶ 3.11. Upon receiving DOH's letter, the Gutierrezes retained an attorney. *Id.* ¶¶ 3.12 & 3.13. The Gutierrezes offered to settle all claims against Dr. Anglesey for $3 million, which is believed to be the full applicable policy limits of Dr. Anglesey's liability policy with APIC. *Id.* ¶ 3.15. On March 25, 2014, Dr. Anglesey's counsel demanded that APIC provide coverage for the Gutierrez claim and advised that Dr. Anglesey intended to consent to judgment as to the Gutierrezes' claims because he lacked the funds and resources to defend the Gutierrez lawsuit and requested that APIC reconsider its coverage denial and its decision not to defend Dr. Anglesey. ECF No. 3 ¶ 3.13. APIC reaffirmed its decision to deny coverage and rejected any obligation to defend Dr. Anglesey. *Id.* ¶ 3.14.

On April 28, 2014, APIC filed a lawsuit in the Central District of California, seeking a court order requiring the parties to arbitrate the dispute under the insurance policies' arbitration provision or alternatively for declaratory relief regarding rescission of the insurance policy. ECF No. 24, Ex. A (Case No. 8:14-CV-00665-CBM). Dr. Anglesey and the Gutierrezes appeared in the California federal lawsuit and moved to dismiss the lawsuit. ECF No. 3 ¶ 3.16.

ORDER - 5

On May 19, 2014, the Gutierrezes filed a lawsuit against Dr. Anglesey in Benton County Superior Court. *Gutierrez v. Anglesey*, No. 14-2-01315-6 (Benton County Superior Court). On May 20, 2014, the Gutierrezes and Dr. Anglesey agreed to settle the state court lawsuit for a $3,000,000 consent judgment in favor of the Gutierrezes, a covenant not to execute the consent judgment, and an assignment to the Gutierrezes of all of Dr. Anglesey's rights against APIC, contingent on the state court approving the settlement's reasonableness and entering judgment. ECF No. 29 at 6-7.

On May 28, 2014, the Gutierrezes asked the Benton County Superior Court to find that the settlement was reasonable under Washington law, and notice was provided to APIC of the reasonableness hearing. ECF No. 29 at 7. APIC opposed the Gutierrezes' request, arguing that the state court should not intrude on the Central District of California lawsuit. Before the state court ruled on the reasonableness of the proposed settlement, the Gutierrezes voluntarily dismissed its state-court lawsuit against Dr. Anglesey without prejudice on July 31, 2014. ECF No. 3 ¶ 3.18; ECF No. 29-2. The Gutierrezes chose this approach as APIC filed a motion to compel arbitration in the California federal court on June 19, 2014, and therefore the Gutierrezes needed to locate California counsel to defend the California federal lawsuit. ECF No. 29-2.

In the California federal lawsuit, the Gutierrezes filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim. ECF No. 29, Exs. A & B. Federal Judge Consuelo Marshall heard argument on September 8, 2014. On January 15, 2015,

ORDER - 6

Judge Marshall entered an Order dismissing the federal lawsuit on the grounds the court lacked subject matter jurisdiction, noting "[t]o this Court's knowledge, there has been no subsequent litigation or settlement between any of the parties, nor is there a pending claim," ECF No. 29-3 at 3.  Judge Marshall did not address the Gutierrezes' argument that the federal court in California lacked personal jurisdiction over them.  *Id.* at 6.

On February 10, 2015, APIC appealed the California federal court's order of dismissal to the Ninth Circuit Court of Appeals, Case No. 15-55231.  The appeal is pending.

On March 9, 2015, Dr. Anglesey and the Gutierrezes signed a "Settlement Agreement, Assignment of Rights, Covenant not to Execute, Duty to Cooperate, and Mutual Releases."  ECF No. 32-1.  The purpose of the agreement was to "forever settle and resolve all disputes, claims and controversies that have been asserted, will be asserted, or could have been asserted, by Gutierrez against Anglesey in the lawsuit entitled *Eliseo and Veronica Gutierrez v. Michael Anglesey and Jane Doe Anglesey*, which will be filed in Benton County Superior Court . . . no later than 45 days of this agreement."  *Id.* at 1 ¶ A. In the agreement, Dr. Anglesey stipulated to entry of judgment against him in the amount of $3,000,000 and assigned to the Gutierrezes any and all rights that Dr. Anglesey maintained under the 2012 and 2013 professional liability policies issued by APIC.  The agreement required the parties to "request a review by the Benton County Superior Court in regard to the reasonableness of the settlement within 30 days of the lawsuit filing." At the September

ORDER - 7

23, 2015 hearing, Plaintiffs' counsel Ms. Clare advised the Court that the Gutierrezes filed an ex parte motion in the Benton County Superior Court to obtain a reasonableness determination; the Benton County Superior Court reportedly determined the settlement was reasonable without providing APIC notice or an opportunity to be heard.[3]

On April 6, 2015, the Gutierrezes and Dr. Anglesey filed this lawsuit in the Eastern District of Washington against APIC, claiming that APIC breached its duty of good faith, violated Washington Consumer Protection Act, and violated Washington's Insurance Fair Conduct Act in its dealings with Dr. Anglesey, and seeking a judicial determination regarding insurance coverage and APIC's duty to defend Dr. Anglesey. ECF No. 3. Plaintiffs took steps to serve the Complaint on APIC; however, APIC filed two motions to dismiss as it deemed those service attempts deficient. ECF Nos. 7 & 11. APIC submits that it was properly served on June 19, 2015; and counsel for APIC then contacted Plaintiffs' counsel to discuss that it would withdraw its motions to dismiss based on improper service. ECF No. 28 at 2-3.

On June 30, 2015, APIC moved the Ninth Circuit to remand the appealed matter back to the Central District of California on the grounds that the Gutierrezes and Dr. Anglesey's new settlement creates a case or controversy over which the Central District of California has jurisdiction. ECF No. 24, Ex. B. Recently, the Ninth

---

[3] As the Court was not provided a copy of this ex parte motion or the Benton County Superior Court's order, the Court is unaware of the date of these actions and the language contained on the documents.

ORDER - 8

Circuit denied APIC's motion to remand without prejudice and permitted the Central District of California to entertain a reopening of the lawsuit it dismissed, and if so, then APIC was granted permission to file a renewed motion to remand with the Ninth Circuit. Fed. R. App. P. 12.1(b).  ECF No. 38, Ex. 1.

On July 2, 2015, Plaintiffs sought default judgment against APIC in this lawsuit because APIC had yet to file an answer following the mailing of a summons and the Complaint, as well as other methods of service.  ECF No. 20.  A week later APIC filed a Stipulated Motion for Order Re Service and Withdrawal of Motion for Default, advising the Court that the parties had resolved the issues relating to service and therefore the Plaintiffs' motion for default was moot so long as APIC "answer[ed] or otherwise respond[ed] to the complaint by July 16, 2015."  ECF No. 21.  By that date, APIC filed a Motion to Dismiss, or in the Alternative, Stay Proceedings.  ECF No. 24.

Days later, Plaintiffs' counsel Andrea Clare filed a declaration advising that her agreement to withdraw the Motion for Default Judgment had been premised on APIC filing an answer—not a motion to dismiss.  ECF No. 26.  Based on a telephone conversation with APIC's counsel David Schoeggl, Ms. Clare understood that APIC would file an answer; she had overlooked the reference to "or otherwise respond to the complaint" in the follow-up email sent by Mr. Schoeggl.  ECF No. 26 at 3-4; ECF No. 26, EX. B.  Because Plaintiffs would not have agreed to withdraw the Motion for Default Judgment if APIC did not file an answer, Plaintiffs ask the Court to rule on the Motion for Default Judgment, ECF No. 19.  ECF No. 26 at 5.

ORDER - 9

With this factual and procedural background, the Court turns to the three pending motions: Plaintiffs' Motion for Default Judgment, ECF No. 19; the "Stipulated" Motion for Order Re Service and Withdrawal of Motion for Default, ECF No. 21; and APIC's Motion to Dismiss, or in the Alternative, Stay Proceedings, ECF No. 24.

**B.   Plaintiffs' Motion for Default Judgment and the "Stipulated Motion" for Order Re Service and Withdrawal of Motion for Default**

Plaintiffs seek entry of a judgment by default against APIC because APIC failed to answer within twenty-one days of service. ECF No. 19. APIC opposes the motion contending that it filed a responsive document—its dismissal motion—by the agreed-upon date, July 16, 2015, and contends that Plaintiffs ought to abide by their counsel's agreement to withdraw the motion for default. ECF No. 27.

Given Ms. Clare's misunderstanding as to the parties' agreement regarding under what circumstances Plaintiffs would withdraw their motion for default judgment, the Court declines to require Plaintiffs to withdraw their motion and strikes the "Stipulated" Motion for Order Re Service and Withdrawal of Motion for Default. The Court turns to analyzing whether entry of default judgment is appropriate.

Under Federal Rule of Civil Procedure 55, obtaining a default judgment is a two-step process. First, under Rule 55(a), default may be entered when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Once default has been entered, the party seeking a default judgment may then file a motion for default judgment pursuant to Rule 55(b). The decision whether or not to grant default is

within the discretion of the district court.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In exercising its discretion to grant or deny a motion for default and subsequent motion for default judgment, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Here, Plaintiffs ask the Court to enter default judgment without first seeking entry of default.  Local Rule 55.1 requires that the moving party provide notice at least 14 days prior to the filing of the motion for entry of default and file an affidavit stating that this this notice requirement has been satisfied.  L.R. 55.1((a)(1) & (2).  Plaintiffs failed to satisfy these procedural requirements.

Even if these procedural requirements had been met, the Court declines to enter default against APIC.  APIC is defending itself: APIC has filed motions to dismiss based on improper service and communicated to opposing counsel that it would file an answer or otherwise respond to the Complaint, which it has now done.  None of the *Eitel* factors, other than possibly the merits of Plaintiffs' substantive claims, support entry of default under the circumstances. In light of APIC's continued interest in defending itself, the Court finds justice requires that the merits of this dispute be resolved. The next question is which court is the proper forum to resolve the

ORDER - 11

underlying coverage dispute between the parties and/or the Plaintiffs' state-law claims: an arbitrator (as APIC maintains is required by the insurance policies), this Court, or the Central District of California. APIC's motion to dismiss addresses this forum question.

**C.   APIC's Motion to Dismiss**

In its motion, APIC asks the Court to dismiss this lawsuit pursuant to Federal Rule of Civil Procedure 12(b) and the Court's inherent powers because the Central District of California lawsuit was the first-filed lawsuit as to the insurance-related matters between the parties, and Plaintiffs should be prevented from forum shopping. At the hearing, given the Ninth Circuit's recent ruling regarding APIC's motion to remand pertaining to the Central District of California, APIC asked the Court to consider staying the lawsuit to permit APIC an opportunity to file a motion with the Central District of California to seek relief from that court's prior dismissal order in light of the Plaintiffs' new settlement agreement and assignment of rights under the insurance policy. Plaintiffs oppose dismissal, transfer, or a stay of this lawsuit, arguing 1) this state-law tort lawsuit is substantially different from the declaratory judgment lawsuit that APIC filed in federal court in California, 2) a Washington court should hear their state-law claims because RCW 49.18.200 invalidates the insurance policies' arbitration provision and RCW 49.18.200 is not preempted by the Federal Arbitration Act, and 3) a California forum would be costly and inconvenient for the parties, witnesses, and attorneys.

Beginning with the first-filed doctrine, this doctrine is a well-settled judicial comity doctrine which permits one district to decline to exercise jurisdiction over a matter if a complaint involving the same parties and issues has already been filed in another district. *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982); *Church of Scientology of Cal. v. U.S. Dep't of Defense*, 611 F.2d 738, 749-50 (9th Cir. 1979); *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). The first-filed doctrine's purpose is to prevent conflicting judgments and promote judicial efficiency; accordingly, if these goals will not be served, then a court need not abide by the first-filed doctrine. *Church of Scientology of Cal.*, 611 F.3d at 750.

Plaintiffs submit that the Court need not apply the first-filed doctrine because the Central District of California did not address the merits of APIC's declaratory judgment action once it determined that no case or controversy existed. However, the Central District of California determined no case or controversy existed because the Gutierrezes and Dr. Anglesey at that time advised the court that they were no longer seeking to settle the dispute between them, and the Gutierrezes dismissed its state-court lawsuit against Dr. Anglesey. Then, within two months of the Central District of California's ruling that no case or controversy existed, the Gutierrezes and Dr. Anglesey entered into another substantially similar agreement.

Therefore, it was the Gutierrezes' and Dr. Anglesey's chosen course of settlement and litigation-related conduct that caused the Central District of California court to not reach the question of

arbitration or insurance validity. Under these circumstances, the fact that the Central District of California did not reach the merits in its declaratory judgment lawsuit is not a basis to not abide by the first-filed doctrine.

Plaintiffs also submit that this Court should exercise jurisdiction because a Washington-based court, not a California-based court, should hear their Washington state-law tort claims. Plaintiffs highlight that the insurance policies' arbitration provision is not valid under RCW 49.18.200. The Gutierrezes may be correct that pursuant to RCW 49.18.200 the insurance policies' arbitration provision is invalid as applied to a Washington insured. *See State Dep't of Transp. v. James River Ins. Co.*, 176 Wn.2d 390, 399 (2013); *but see Speece v. Allied Prof'ls Ins. Co.*, 289 Neb. 75, 88 (2014). Nonetheless, Plaintiffs can bring this same argument before the Central District of California, if the court determines it is now presented with a case or controversy over which it can exercise subject matter or personal jurisdiction.

Plaintiffs further argue that the Central District of California could choose to decline to exercise jurisdiction over APIC's lawsuit brought under the Declaratory Judgment Act. *See Evanston Ins. Co. v. Workland & Witherspoon, PLLC*, 2014 WL 4715879, *7 (E.D. Wash. Sept. 22, 2014) (citing case law on this point); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942). However, this line of federal-court-abstention cases apply where a federal court is asked to abstain from exercising jurisdiction over a federal lawsuit brought

ORDER - 14

under the Declaratory Judgment Act because there is a *state* court lawsuit involving the same issues and the same parties. Although the Court sits in Washington, it is a federal court—not a state court, therefore this line of cases is inapposite.

Under the circumstances, the Court deems it appropriate to stay this lawsuit to permit the Central District of California an opportunity to consider APIC's to-be-filed motion seeking relief from the court's prior dismissal order, and the Ninth Circuit to consider the Central District of California's decision. To ensure that this lawsuit does not stay for an extended period of time, APIC must file its motion with the Central District of California within fourteen days (October 7, 2015).

Concerned that this lawsuit will be stayed for an extended period of time and the harm that this delay will cause the Gutierrezes, Plaintiffs' counsel orally requested the Court to order all motions pertaining to arbitration be filed within twenty-eight days. Recognizing the Gutierrezes' concern but also recognizing that Judge Marshall and the Ninth Circuit, given their respective dockets, may be unable to resolve the matters that will be brought before them within twenty-eight days, the Court declines at this time to impose a filing deadline for briefs related to arbitration, especially since the question of what forum should resolve the question of arbitration has not yet been determined. Should the Central District of California and/or the Ninth Circuit fail to take action related to APIC's to-be-filed motion, by January 1, 2016, the Gutierrezes are free to file a motion with this Court seeking relief from the stay.

For the reasons set forth above, **IT IS HEREBY ORDERED:**

1. The Gutierrezes' Motion for Default Judgment, **ECF No. 19,** is **DENIED.**

2. The "Stipulated" Motion for Order Re Service and Withdrawal of Motion for Default, **ECF No. 21**, is **STRICKEN** as it was not agreed upon by the parties.

3. APIC's Motion to Dismiss, or in the Alternative, Stay Proceedings, **ECF No. 24**, is **DENIED IN PART** (dismiss) **and GRANTED IN PART** (stayed pending the Central District of California's action on APIC's to-be-filed motion, and the Ninth Circuit's related action).

4. No later than **fourteen days**, APIC is to file its motion seeking relief with the Central District of California. APIC is to promptly file a copy of the Central District of California's decision with this Court, and should the Central District of California choose to revisit its dismissal, then a copy of the Ninth Circuit Court of Appeal's decision.

5. This lawsuit is **STAYED**; the scheduling conference is **STRICKEN**. If the Central District of California elects not to revisit its dismissal, the Court will reset the scheduling conference.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel, the Ninth Circuit Court of Appeals (Case No. 15-55231), and the Central District of California (D.C. No. 8:14-cv-00665-CBH-SH).

ORDER - 16

1   **DATED** this   24th    day of September 2015.

                    s/Edward F. Shea
                    EDWARD F. SHEA
              Senior United States District Judge

Q:\EFS\Civil\2015\5033.motions.lc1.docx

ORDER - 17